UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**PHILLIP DENNIS KEITH**,

Debtor.

Case No. **10-61722-11**

## MEMORANDUM of DECISION

At Butte in said District this 29th day of September, 2010.

In this Chapter 11 bankruptcy, after due notice, a hearing was held September 20, 2010, in Billings on First Interstate Bank Billings Height Branch ("FIB") Motion to Convert to Chapter 7 filed August 9, 2010, and the United States Trustee's ("UST") Motion to Dismiss or Convert to Chapter 7 filed August 10, 2010.  Wells Fargo Bank, N.A., Western Security Bank and Rocky Mountain Bank joined in the UST's Motion to Convert.  Allen Beck of Lewistown, Montana appeared at the hearing on behalf of Debtor; James A. Patten of Billings, Montana appeared at the hearing on behalf of FIB; Neal G. Jensen of Great Falls, Montana appeared on behalf of the UST; Doug James of Billings, Montana appeared on behalf of Wells Fargo Bank, N.A.; Malcolm H. Goodrich of Billings, Montana appeared on behalf of Western Security Bank; Richard J. Samson of Missoula, Montana appeared on behalf of Rocky Mountain Bank; and Keith A. Jones of Helena, Montana appeared on behalf of the Montana Department of Revenue.  Debtor Phillip Dennis Keith testified.  The UST's Exhibits 1, 2 and 3 were admitted into evidence without objection.

1

BACKGROUND

Debtor filed his voluntary Chapter 11 bankruptcy petition on July 16, 2010. Debtor's petition was not accompanied by Debtor's schedules or statement of financial affairs. Instead, upon Debtor's request, Debtor was granted an extension of time until August 6, 2010, to file his schedules and statement of financial affairs. Debtor tardily filed his schedules and statement of financial affairs on August 11, 2010.

Even though Debtor's schedules and statement of financial affairs were not filed until August 11, 2010, they are dated July 16, 2010. Additionally, the schedules and statement of financial affairs filed August 11, 2010, bear Debtor's electronic signature, but Debtor testified that he did not actually sign his schedules and statement of financial affairs until his § 341(a) meeting of creditors held September 3, 2010.

Debtor did not prepare his schedules or statement of financial affairs. Rather, Debtor's bookkeeper prepared Debtor's schedules and statement of financial affairs. Debtor admitted that he did not carefully review and confirm the accuracy of the information contained in his schedules and statement of financial affairs, but instead only reviewed them to "a degree."

Debtor testified that his schedules do not list various parcels of real property, including property located on the "East Ridge" and property located on the Gainey Ranch in Scottsdale, Arizona. Debtor testified that he did not list such property in his schedules because he had either gifted such property, on intended to gift such property to his children. The Court notes that Debtor's purported gifts to his children are similarly not listed in Debtor's statement of financial affairs. Debtor also testified that he leases his main business office but the leasehold interest is not listed in Debtor's schedules.

While Debtor failed to list numerous parcels of real property in his schedules, Debtor's schedules do include real property valued by Debtor at $4,769,194.00. Debtor's Schedule A indicates that the $4,769,194.00 of real property is not encumbered by any debt or liens. Debtor admitted at the hearing that the listed real property is subject to liens, but explained that he thought he was only required to list "original" debt.

As for the listed real property, Debtor listed the value of Lots 18 and 19 as $505,000. At the hearing, Debtor testified that the property is actually worth approximately $1.8 million. Debtor explained that Schedule A reflects the value of the land only. Debtor did not include the value of the building or the business on the property.

Debtor's listing of personal property on Schedule B suffers from the same defects as Debtor's Schedule A. For instance, Debtor asserts on Schedule B that he owns no books, pictures, furniture, appliance, wearing apparel, etc. Debtor testified at the hearing that he owns such items of personal property. Debtor also conceded that the listed valuations of his various companies, such as Turn of the Century, Inc. and PS, Inc. are incorrect. Debtor testified that his valuations were based on "comps" of surrounding properties. Debtor also testified that he does not own 100% of PS, Inc., but instead only owns approximately 89% of the stock in such entity, even though Debtor's Schedule B states that Debtor owns 100% of PS, Inc.

Debtor next testified that he believes Willis and Walls owe him $240,000. In somewhat unintelligible testimony, Debtor also admitted that Turn of the Century, Inc. owes Debtor approximately $132,000 in past due rent and PS, Inc. owes Debtor approximately $814,400 in past due rent. The above amounts owed to Debtor are not reflected in Debtor's schedules. Debtor testified that he did not list the rent owed because he and his accountant were considering

3

converting the amounts owed by Turn of the Century and PS to equity. Such suggestion was met by opposition from the creditors attending the hearing.

Debtor similarly did not list any contingent or unliquidated claims in his schedules. However, Debtor conceded at the hearing that he had contemplated filing adversary proceedings against Western Security Bank, Rocky Mountain Bank, Willis and Walls, Spelio and other entities on grounds such entities owe Debtor money.

Debtor also failed to list a 2005 Lexus and a 2005 Hummer in his schedules. The 2005 Hummer, which Debtor leaves in Arizona, is owned free and clear of any liens. Debtor explained that he did not list the Hummer in his schedules because he gave the 2005 Hummer to his son, even though the Hummer is titled in Debtor's name.

Moving to Schedule C, Debtor claimed all his exemptions using the federal exemptions. Debtor also claims a homestead exemption of $505,000. Debtor admits that the property on which he claims the homestead property is commercial, not residential, property.[1]

On Schedule D, Debtor asserts that he owes First Interstate Bank $51,850.00 on a judgment which is secured by gaming machines having a value of $50,000. Debtor first testified

---

[1] Montana has opted out of the federal exemption scheme. *See* MONT. CODE ANN. ("MCA") § 31-2-106. Thus, the Court looks to state law to determine the extent of Debtor's allowable homestead exemption. *In re Loeb*, 12 Mont. B.R. 524, 527 (Bankr. D. Mont. 1993). Under § 70-32-101, MCA:

> The homestead consists of the dwelling house or mobile home, and all appurtenances, in which the claimant resides and the land, if any, on which the same is situated, selected as provided in this chapter.

Moreover, MCA § 70-32-106 provides that a "declaration of homestead must contain a statement that the person making it *is residing* on the premises and claims them as a homestead...". The aforementioned Code sections illustrate the general rule, in Montana, that an individual asserting a homestead exemption must reside in or on the premises being claimed exempt.

that he personally owns some gaming machines but then recanted, stating the gaming machines are actually owned by PS, Inc. Even though First Interstate Bank is listed on Debtor's Schedule D as a secured creditor, Debtor determined during the hearing that he is not personally indebted to First Interstate Bank on such obligation.

Debtor also testified that he signed a confession of judgment to Willis and Walls, but Debtor claims that such obligation is now disputed. Debtor lists an obligation of $683,600 owed to Willis and Walls on Schedule D, but Schedule D does not reflect that the obligation is contingent, unliquidated or disputed. Debtor lists Spelio as having a secured claim of $149,734 secured by unidentified property having a value of $67,000. Similarly, Debtor lists Western Security Bank as having a judgment lien of $970,981.00 secured by identified property having a value of $0.00. Contrary to Debtor's schedules, Debtor testified that Western Security Bank's judgment lien is secured by liquor licenses that have a value well in excess of $0.00.

On Schedule I, Debtor listed monthly income of $16,600 from Turn of the Century, Inc. Debtor, however, did not list his social security income or consulting income from Playatech.

Debtor does not list any mortgage payment on Schedule J, but Debtor testified that he makes a monthly mortgage payment in excess of $8,000 each month. Debtor explained that his accountant told him not to list the mortgage payment because the home is not in Debtor's name.

Debtor also did not list payments made to creditors just prior to his petition date. Debtor explained that he did not consider his mortgage payment, lease and car payments, utility payments and other such similar payments as "payments to creditors." Debtor once again explained that many of the items on which he was making payments had been gifted to his children. Debtor's schedules and statement of financial affairs do not disclose any gifts to his

5

children and similarly, do not disclose that Debtor is holding property for others.

Debtor also entered into a Commercial Buy-Sell Agreement dated June 4, 2010, to sell property located at 2300 King Avenue to Ronald M. Lund for $816,000.  It is not clear whether Debtor has indeed sold such property, but neither the property nor the Buy-Sell Agreement are listed in Debtor's schedules or statement of financial affairs.

Debtor conceded at the hearing that his schedules were incorrect and "sloppily done." Debtor testified that his schedules and statement of financial affairs have been corrected, but Debtor made no effort to file such schedules or at a minimum, present them as an exhibit at the hearing.  Instead, the Court has before it Debtor's admittedly incorrect schedules and Debtor's testimony about allegedly corrected schedules.  Unfortunately, Debtor's testimony is not credible.

Debtor also caused five corporations to file bankruptcy: *In re Turn of the Century, Inc.*, Case No. 10-61662; *In re PS, Inc.*, Case No. 10-61663; *In re Jackpot on Main, Inc.*, Case No. 10-61664; *In re Bailey's Pub, Inc.*, Case No. 10-61884; and *In re Blackhawk, Inc.*, Case No. 10-61886.  According to the schedules for the above entities completed by Debtor, Turn of the Century owns no real property but owns personal property valued at $3,573,600.00.  Turn of the Century's assets are encumbered by debts totaling $7,944,168.10 (including a judgment lien of Willis and Walls for $683,600 and a judgment lien of Rocky Mountain Bank for $5,973,226.42). PSI's assets total $1,142,558.00 and its debts total $7,908,774.73 (including Willis and Walls' judgment lien of $683,600 and Rocky Mountain Bank's judgment lien of $5,973,226.42). Jackpot on Main's assets total $950,000 and its liabilities total $7,015,723.73 (including Willis and Wall's judgment lien of $683,600 and Rocky Mountain Bank's judgment lien of $5,973,226.42).  Bailey's Pub's sole asset is real property valued at $1,435,547.00.  Bailey's

Pub's liabilities total $6,656.825.42, consisting solely of the judgment lien of Willis and Walls of $683,600 and Rocky Mountain Bank's judgment lien of $5,973,226.42. Blackhawk has no assets but its liabilities total $7,898,847.38, which amount once again includes the judgment liens of Willis and Walls and Rocky Mountain Bank.

In response to the UST's motion to dismiss or convert, Debtor's counsel stated: "Nearly all of the interest in assets owned by Philip Dennis Keith and liabilities owed by, Philip Dennis Keith, are also assets owned by, or liabilities of [Turn of the Century, Inc., PS, Inc., Jackpot on Main, Inc., Bailey's Pub, Inc., and Blackhawk, Inc.]. Therefore, it was not possible to complete the Statement of Financial Affairs and Schedules of Philip Dennis Keith until completion of the related Statements of Financial Affairs and Schedules of the affiliated debtors." However, Debtor testified that all his assets are not necessarily owned by Turn of the Century, Inc., PS, Inc., Jackpot on Main, Inc., Bailey's Pub, Inc., or Blackhawk, Inc., and that he owns assets and owes liabilities separate from his entities. Given the admission that Debtor owns assets and owes liabilities separate and distinct from his corporations, Debtor agreed to withdraw his pending motion for substantive consolidation filed August 23, 2010, and his amended motion for substantive consolidation filed August 24, 2010.

## CONTENTIONS of the PARTIES

FIB seeks conversion of this case to Chapter 7 solely on grounds Debtor did not timely file his schedules as ordered. In addition to Debtor failing to timely comply with the Court's July 23, 2010, Order granting Debtor until August 6, 2010, to file his schedules and statement of financial affairs, the UST seeks dismissal or conversion of this case under 11 U.S.C. § 1112(b) because: (1) Debtor failed to timely provide information requested by the UST; (2) Debtor does

7

not have a reasonable likelihood of rehabilitation; and (3) conversion or dismissal is in the best interests of creditors. Debtor opposes the UST's motion arguing that he has a reasonable likelihood of rehabilitation once the assets of Debtor and his affiliated Debtor corporations are consolidated. Debtor also contends that under the unique and unusual circumstances of this case, which requires substantive consolidation, it is clearly not in the best interests of creditors to dismiss Debtor's Chapter 11 petition or convert Debtor's case to Chapter 7 of the Bankruptcy Code.

## APPLICABLE LAW

Conversion or dismissal is provided for at § 1112(b), which sets forth a nonexclusive list of factors that warrant conversion of dismissal. *In re Shockley*, 15 Mont. B.R. 114, 116 (Bankr. D. Mont. 1996); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382 (Bankr. E.D. Pa. 1991). Formerly the analysis involved a two-step process, first to determine whether cause exists to dismiss or convert, and second whether dismissal is in the best interests of creditors and the estate. *In re BTS, Inc.*, 247 B.R. 301, 308-09 (Bankr. N.D. Okla. 2000) (*quoting In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994)); *In re Shockley*, 15 Mont. B.R. at 117 (*quoting Superior Siding*). Section 1112(b) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8 Stat. 23 § 442 (Apr. 20, 2005) and now provides:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

8

>(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that –
>
>>(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections to not apply, within a reasonable period of time; and
>>
>>(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) –
>>
>>>(I) for which there exists a reasonable justification for the act or omission; and
>>>(ii) that will be cured within a reasonable period of time fixed by the court.
>
>(3) The Court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.
>
>>(4) For purposes of this subsection, the term 'cause; includes –
>>>(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>>>(B) gross mismanagement of the estate;
>>>(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>>>(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>>>(E) failure to comply with an order of the court;
>>>(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>>>(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>>>(H) failure timely to provide information or attend meetings

>   reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>   (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
>   (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>   (K) failure to pay any fees or charges required under chapter 123 of title 28;
>   (L) revocation of an order of confirmation under section 1144;
>   (M) inability to effectuate substantial consummation of a confirmed plan;
>   (N) material default by the debtor with respect to a confirmed plan;
>   (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>   (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

This Court's discretion with respect to conversion or dismissal was circumscribed following enactment of BAPCPA. As explained in 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[3] (15th ed. rev.):

> As amended in 2005, section 1112(b) provides further direction in guiding the court's discretion. To begin with, section 1112(b)(1) directs that the court must convert or dismiss the case if the movant establishes cause unless the court determines that unusual circumstances exist and the court enumerates the circumstances. Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.
>
> In addition, section 1112(b)(1) directs that the court must convert or dismiss the case for cause unless the appointment of a chapter 11 trustee would

be in the best interests of creditors and the estate. Under section 1104(a)(3), the court is directed to appoint a trustee if cause exists to convert or dismiss a chapter 11 case and doing so would be in the best interests of creditors and the estate. Notably, when sections 1104(a)(3) and 1112(b) are read together, it seems clear that the court *must* appoint a chapter 11 trustee rather than convert or dismiss the case if section 1104(a)(3) applies. Neither section 1104(a)(3) nor 1112(b) defines what constitutes the "best interests of creditors and the estate." This phrase, however, has long been used in section 1112 and courts have considered a number of factors in applying it.

Finally, section 1112(b)(2) creates an exception to section 1112(b)(1) by directing that, absent unusual circumstances, the court must *not* convert or dismiss the case if (1) there is a reasonable likelihood that a plan will be confirmed within the time frames specified in subsection 1112(b)(2), (2) the grounds for converting or dismissing the case include an act or omission by the debtor other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (3) there exists a reasonable justification for the act or omission, and the act or omission will be cured within a reasonable time fixed by the court. In establishing the time frames for confirmation of a plan, section 1112(b)(2) refers to sections 1121(e) and 1129(e), providing deadlines for the filing and confirmation of plans in small business cases. If the case is not a small business case, the time frame is designated as "a reasonable period of time." If the movant establishes cause to convert or dismiss the case for substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then section 1112(b)(2) does not apply. If the movant demonstrates cause to convert or dismiss the case for a reason other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then the court must consider whether there exists a reasonable justification for the act or omission constituting cause for conversion and dismissal, as well as whether the act or omission can be cured within a reasonable time fixed by the court. Yet if cause for conversion or dismissal exists because the debtor filed its chapter 11 case in bad faith, then section 1112(b)(2) would not apply because, by determining that the debtor filed the case in bad faith, the court would foreclose a reasonable justification for the filing. In addition, a bad faith determination would likely constitute "unusual circumstances" demonstrating that section 1112(b)(2) should not be applied. If the court declines to apply section 1112(b)(2) on the basis of the existence of unusual circumstances, the court must enumerate those circumstances.

The determination under § 1112(b) rests with the sound discretion of the court. *Pioneer*

11

*Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 806-07 (9th Cir. 2001); *In re Henson*, 289 B.R. 741, 752-53 (Bankr. N.D. Cal. 2003); *In re Shockley*, 15 Mont. B.R. at 116; *In re BTS, Inc.*, 247 B.R. at 309.  The initial burden of proof is on the moving party.  *In re BTS, Inc.*, 247 B.R. at 303.

## DISCUSSION

Debtor filed his schedules and statement of financial affairs, albeit tardily on August 11, 2010, thus curing FIB's sole grounds for dismissal and the UST's first grounds for dismissal.  In addition, the UST produced no evidence at the hearing that Debtor has not produced copies of his most recently filed federal income tax return; bank statements for the last two months; year-end financial statements for the last two years (annual balance sheets, income statements, and cash flow statements); most recent monthly financial statements; six-month cash flow projection and budget; signed copy of Official Bankruptcy B-21 (Statement of Social Security Number); and the debtor's certification that the Initial Reporting Requirements are complete, true, and accurate to the best of his knowledge, information and belief.  The Court thus deems the UST's second grounds for dismissal either cured or waived.

However, the Court finds merit in the UST's request for conversion on grounds Debtor has no reasonable likelihood of rehabilitation and that conversion is in the best interests of creditors.  Debtor based his opposition to the UST's motion on the fact that Debtor was going to consolidate this case with the five pending bankruptcies of his corporations.  However, Debtor conceded at the hearing that consolidation is not appropriate because Debtor has assets and liabilities separate and distinct from the debtor corporations.  Absent consolidation with the

corporate entities, it appears that Debtor does not have any reasonable likelihood of rehabilitation.

Further, Debtor's signing declarations under penalty of perjury that he read his schedules and statement of financial affairs, when he had not or had done so only to a degree, and declaring under penalty of perjury that they were true and correct when he knew that whatever was going to be filed was not complete, shows cavalier indifference and a pattern of disdain for the truth, as well as shoddy practice, and will not be condoned by this Court.  No amount of professional courtesy, understandings, courtesies, collegiality or reliance on counsel can excuse perjury.

Morever, even though Debtor's case had been pending for over two months at the time of the hearing, Debtor failed to file accurate schedules.  Debtor, still to this date, has not filed corrected schedules, even though Debtor testified that he had prepared amended schedules and a statement of financial affairs prior to the September 20, 2010, hearing.  As the Ninth Circuit Bankruptcy Appellate Panel explained:  "The efficacy of the bankruptcy system depends in important aspects on accurate self-reporting by debtors."  *In re An-Tze Cheng*, 308 B.R. 448, 458 (9th Cir. 2004), *aff'd.*, 160 Fed.Appx. 644 (9th Cir. 2005).  Debtor's empty statements that he amended his schedules and statements does not excuse or explain Debtor's numerous errors and omissions in his schedules and statement of financial affairs, and his failure to promptly amend.

It is clear that appointment of a Chapter 7 Trustee to investigate and gather Debtor's assets is in the best interest of creditors.  Therefore, in accordance with the Court's oral ruling made in open Court on September 20, 2010, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor's Motion to Consolidate filed August 23, 2010, at docket entry no. 23, and the amended Motion to Consolidate filed August 24, 2010, at docket entry no. 24, are deemed withdrawn; and the hearing on such motions scheduled for October 7, 2010, is vacated.

IT IS FURTHER ORDERED that First Interstate Bank Billings Height Branch's Motion to Convert to Chapter 7 filed August 9, 2010, is DENIED.

IT IS FURTHER ORDERED that the United States Trustee's Motion to Dismiss or Convert to Chapter 7 filed August 10, 2010, is GRANTED; and effective September 20, 2010, this case is converted to Chapter 7 of the Bankruptcy Code.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana